**GUDGER v McKIM et**

Ohio Common Pleas, Hamilton Co

Decided Sept 21, 1937

72

I. L. Huddle, Cincinnati, for plaintiff.

Robert C. Porter, Cincinnati, for J. Arthur McKim.

Shook, Davies, Hoover & Beall, Cincinnati, for the Branch Hill Methodist Church.

Gatch, McLaughlin & Gatch, Cincinnati, for defendant, The Hope Gospel Mission, and Hope Haven Home for Girls.

## OPINION

By MORROW, J.

This is an action for the construction of a will.

The executor filed a petition in July 1935, and it appears that the testator died in February 1932, the will having been probated February 25th of that year. The plaintiff states that he is in doubt as to the true construction of Item I, which reads as follows:

"Two hundred dollars to the Remington Church for the support of the Gospel—this amount to be placed in the care of Mrs. Belle Dean."

"Also—two hundred dollars to the Branch Hill Church of Christ, this amount to be placed in the care of Norma Schoeffler."

We are of the opinion that the testatrix intended that Mrs. Belle Dean and Norma Schoeffler should qualify as trustees and that the words "in the care of" are tantamount to a designation in each case of a trustee.

The executor is authorized to pay the amount of the bequests in each instance to the person so designated.

Plaintiff is also in doubt as to Item II, which reads as follows:

"I also bequeath to Richard Dillon Buckingham and his brother Ray, Junior, sons of Ray Buckingham and Opal Buckingham (deceased) one thousand dollars each for educational purposes—this money to be placed in the care of their father, Ray Buckingham, and in the case of his decease, amount to be placed in care of E. B. Gudger."

The words "in the care of" are again used to accomplish the designation of a trustee and, therefore, the executor is authorized to pay the amount indicated to Ray Buckingham if living, and in case of his death to E. B. Gudger.

"Item III. To the Clermont County Women's Christian Temperance Union, I give one thousand dollars for organization work and upkeep of cottage at Epworth Heights. This amount to be placed in care of Mrs. Norma Schoeffler, Branch Hill, Ohio."

Again the words "in the care of" are used to designate Mrs. Norma Schoeffler as a trustee, and the executor is authorized to pay the amount of the bequest set forth in Item III to Mrs. Norma Schoeffler who will disburse the money for the purposes set forth in said item.

"Item IV. To Graccio Leggo Houlder of Perth, Australia, one thousand dollars in recognition of service rendered to the prohibition cause in this country. This amount to be placed in the Loveland Bank in care of Norma Schoeffler, subject to withdrawal when needed."

The words "in the care of" are used to designate Norma Schoeffler as a trustee for the beneficiary, who is a resident of Australia, and the executor is authorized to pay the amount indicated to said trustee, whose discretion will dictate the time and manner of disbursement of the same to the beneficiary.

"Item V. To the Branch Hill Methodist Church five thousand dollars—any indebtedness on parsonage to be paid from this amount, and balance placed in the Union Savings Building & Loan Company, Loveland, Ohio, on deposit, interest to be used for insurance, taxes and incidental expenses of church."

The words "placed in * * * on deposit" indicate an intent on the part of the testatrix to direct what financial institution shall be the depository of the cash bequest, and not an intent to create the association a trustee. That is to say, this is plainly a direction to deposit the money in a Loveland Building & Loan Company. This conclusion is based upon the following premises:

1. Words are to be interpreted according to their common acceptance and meaning. "On deposit" indicates the creation

of relation of creditor and debtor as between the depositor and a building association.

2. In other parts of the will the testatrix refers to John Snider as a trustee. She therefore must have known what was a trustee and how to use that term in connection with a trust, though it is true she uses alternative words in some of the items adverted to above.

3. The testatrix is presumed to know the law, and therefore not to have directed (by a strained construction) that a building association, not empowered to act as trustee, could assume such a status.

4. The above construction is reasonable, and there is nothing unusual, strange or capricious in a testatrix directing the deposit of a legacy, to be paid in installments for varied purposes, in a building association in which presumably she reposes confidence.

The following rules of law seem to justify our construction of this will, and the codicils, which were written by the testatrix without legal advice, as it appears.

There seems to be no fixed or fast rule applicable to the construction of all wills. 41 O. J., 575. Unless a case be directly in point in its essential circumstances and data, it should have little weight with the court. 41 O. J. 579. Bequests of a charitable nature are to receive a most liberal construction with a view of accomplishing the purpose of the testatrix. 41 O. J. 586. The cardinal rule of interpretation of a will is to ascertain and give effect to the intention of the testatrix. 41 O. J. 590. The testatrix must be presumed to have meant what she said. 41 O. J. 600. The will is construed by its four corners. 41 O. J. 604. Words are used in accordance with their ordinary use and meaning. 41 O. J. 639. The construction of words in a will cannot be varied by evidence of actual intention (general rule). 41 O. J. 640. There is a presumption that the words are used in the primary and ordinary sense. 41 O. J. 641.

The testatrix is presumed to have knowledge of the law. 41 O. J. 520.

In order to create a trust estate by will no particular form of words is to be used. 41 O. J. 815.

The intention of the testatrix determines. 41 O. J. 973.

There is nothing vague or indefinite about the wording of Item V, and the bequest should be paid direct to the trustees of the Branch Hill Methodist Church, and the executor is authorized so to do.

The trustees are charged with the duty of using the money for the purposes set forth in Item V, and will be mindful of the direction of the testatrix, keep the money on deposit in the building association mentioned therein.

"Item VI. It is my desire that there be no forced sale of the farm and that this be left to the judgment of the administrator."

"It is my desire, and I so will that all my property except such as I have specifically bequeathed, be by my executor, or executors, converted into cash, and that the foregoing bequests in money, be paid out of the proceeds of such property, and that the property by me specifically bequeathed be not required to pay any part of any of the bequests made by me in money."

"And I do hereby authorize and empower my said executor to have full power, and without order of the Probate Court, to sell all the remainder of my real estate not by me specifically bequeathed on such terms, and for such price, as to him may seem just and fair; and I do further exonerate the purchaser or purchasers of my said property from seeing to the application of the purchase money."

"It is my will that my executor, or executors have complete and full authority to sell my property without an order of the Probate Court, as fully and completely as I could if I were then living and present."

Plaintiff states on page 7 of the petition "he is uncertain as to his duties in the sale and distribution of the moneys derived from the sale of the properties in this that whether the items of the will giving him absolute discretion as to time, manner and mode of sale, terms on which property is to be sold and whether he must sell at a price less than a fair value under normal conditions and is also uncertain whether in making distribution of the funds derived from the sale of the real estate therein mentioned will be required to pay interest on each specific bequest in said will from the time the estate should be regularly closed according to the statutes, or whether the right to enforce distribution commenced with the time of the sale of the property."

It is true under Item VI the executor (called therein the administrator) is vested with discretion as to when and for what price the property is to be sold. It is also a direction of the testatrix that there "be no forced sale of the farm."

I do not consider the executor's judgment final and absolute, or independent of any court order. Five years and a half have passed since the appointment of the executor, and the time has come to settle this estate. The executor states on the last page of his brief that he has had difficulty in trying to please forty legatees.

We have had a depression and certainly to an extent, if not entirely, the delayed sale of the real property has been justified. However, the time has certainly come to move in the settlement of the estate; and the payment of interest on bequests shall commence with the date of the entry pursuant to this opinion.

The text books state that interest is allowed as compensation for delay in payment, and the whole theory of the rule is that interest should be allowed from the time a legacy ought to be paid to the time it is paid, as compensation for the delay in payment.

In this case we are not holding that there was an abuse of discretion on the part of the executor in foregoing a sale, but arrangements should have been made to pay bequests by this time, and for that reason interest will start on said bequests on the date of the entry, as above stated.

The general rule in this state is that a pecuniary legacy bears interest from the end of the first year from the granting of letters testamentary—that is, the date of the appointment of the executor,—unless it be clearly apparent that the testator did not so intend. See 41 O. J., p. 973, and cases cited thereunder.

We feel that this is a case, however, that comes within the exception, and that the terms of the will are such that the general rule does not apply. That is to say, the direction that "there be no forced sale" and that the property be sold when the judgment of the administrator dictates, was another way of saying that the settlement of the estate be postponed until a fair price could be obtained for the real property of testatrix.

Counsel for Arthur B. McKim winds up his brief in this case as follows:

"The only sensible thing to do is to toss the whole will out and allow the property to descend according to law to the heirs designated by statute."

Counsel for McKim urges that the will and codicils are too vague and uncertain to stand.

We disagree, and while the will and codicils are somewhat unusual in language, and in a sense accurate and technical terms are not employed, the document is, nevertheless, understandable.

Counsel for McKim also raises another question in connection with the fact that Norma Schoeffler, already held by this court to be a trustee for certain funds, is also one of the two attesting witnesses to the will and the codicils.

Sec 10504-19, GC, provides as follows:

"If a devise or bequest is made to a person who is a witness to the will, and the will cannot be proved except by his testimony, the devise or bequest shall be void. The witness shall then be competent to testify to the execution of the will in like manner as if such devise or bequest had not been made. If he would have been entitled to a share of the testator's estate, in case the will was not established, he shall have so much of such share as does not exceed the bequest or devise to him."

He questions whether Norma Schoeffler is a beneficiary and can prove the will, or whether having became a witness she or her beneficiaries thereby forfeited their bequests.

In Vrooman v Powers 47 Oh St 191, 24 NE 267; 8 L.R.A. 39, it is stated. by way of obiter, that a person named as an executor is not competent as a witness to a will because of his interest. However, we have found nothing in Ohio bearing upon the subject of a trustee who appears as an attesting witness.

There are cases, however, bearing upon the same subject in other states, and holding both ways. For instance, it has been held in 271 Ill. 395, Scott v O'Connor, (1916) that an executor is incompetent to attest a will as a witness, and the test of competency of witnesses to a will is whether they will gain or lose, financially, as a direct result of the establishment of the will. To the same effect, Jones v Greiser, 230 Ill. Rep., p. 183.

A rather curious case, 247 Mass., p. 449, holds that one who is a member of the Masonic Lodge which under the provisions of a will after the death of the testator's wife was to receive from proceeds under the will a certain part of the income of the estate of the decedent, and at the expiration of two hundred years was to receive the in-

come of the entire trust fund, was not disqualified by reason of his being a witness to the will, his interest being entirely contingent and uncertain and not a direct interest.

Also in 281 Pa., State Rep., p. 23, Baughman's Estate, it is held (Syl. 6):

"An attesting witness to a will containing gifts to charitable or religious uses may be named as trustee in it and still be a disinterested witness within the meaning of those words in the acts of 1911 and 1917, unless he is given such additional powers as makes him interested in more than the caring for and investing of trust funds, collecting the income therefrom and distributing it to the charities entitled to receive it."

See also 107 Neb. Rep., p. 806, Hayden v Hayden. which holds an executor may serve as subscribing witness to a will. See also Weise v Weise, 150 NW 556, cited in 57 L.R A. (N.S.) 832. syl. 4:

"A trust estate created by a will is not invalid because the trustee is one of the two subscribing witnesses."

In this case we are holding, and in view of the above authorities which concern similar statutes, that the bequests are not made to Mrs. Schoeffler but to the beneficiaries, and that such bequests are not void.

In conclusion, and for the reasons above given. and in view of the above authorities, the will will stand; all bequests will stand; the interest will commence from the date of the entry in this case. and the executor will proceed forthwith diligently to accomplish the sale of the property necessary to be liquidated in order to provide for distribution and payment of bequests.